UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LISA ALLEN, §
 §
 Plaintiff, §
 §
v. § Civil Action No. 3:16-CV-2551-BK
 §
NANCY BERRYHILL, §
Acting Commissioner of Social Security, §
 §
 Defendant. §

**MEMORANDUM OPINION AND ORDER**

The parties have consented to proceed before the magistrate judge. Doc. 18. Now before the Court are the parties' cross motions for summary judgment. Doc. 17; Doc. 22. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **DENIED**, Defendant's *Motion for Summary Judgment* is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

 **A. Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying her claim for disability insurance benefits under the Social Security Act ("the Act"). Plaintiff filed for benefits in June 2013, claiming that she became disabled in April 2013. Doc. 14-3 at 19; Doc. 14-6 at 4-6. Plaintiff's application was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 14-3 at 2-4; Doc. 14-3 at 16-33; Doc. 14-5 at 4-8; Doc. 14-5 at 10-12.

**B. Factual Background**

Plaintiff was 51 years old when she filed her application for disability benefits. Doc. 14-6 at 4. She has a high school equivalency diploma and past relevant work experience as a store stocker. Doc. 14-3 at 80; Doc. 14-7 at 14; Doc. 14-8 at 10.

Plaintiff's relevant medical history indicates that she sought treatment from an orthopedic surgeon, Dr. Gregg T. Podleski, D.O., from July 2012 to March 2013. Doc. 14-8 at 3-11. He noted that Plaintiff had prior right knee arthroscopic surgery and was suffering from severe osteoarthritis in the knee. Doc. 14-8 at 7. By September 2012, however, Dr. Podleski opined that Plaintiff's knee was "close to 100%," and she could return to work on full duty the upcoming week. Doc. 14-8 at 6.

During a May 2013 trip to the emergency room for moderate lower back pain, an X-ray of Plaintiff's lumbar spine showed moderate degenerative changes at L4-L5 with an anterior subluxation of the L4 on L5, but the remainder of the examination revealed only mild degenerative changes. Doc. 14-8 at 15, 17. An August 2013 MRI of Plaintiff's lumbar spine revealed: (1) at L4-5, a disc bulge, bilateral facet effusion and anterolisthesis causing severe bilateral neuroforaminal stenosis; and (2) at L5-S1, a disc bulge, bilateral facet hypertrophy and facet effusion causing severe left and moderate right neuroforaminal stenosis. Doc. 14-9 at 4. In a November 2013 examination, Plaintiff had a normal gait pattern, could heel and toe walk without difficulty, her sensation was grossly intact, a straight leg raise test was negative, and she had full range of motion in her cervical and lumbar spine and full strength in all of her extremities. Doc. 14-9 at 15-16.

In the latter half of 2013, state agency physicians Drs. Randal Reid and Betty Santiago, M.D., both opined the Plaintiff retained the residual functional capacity ("RFC") to (1) lift and

carry 20 pounds occasionally and ten pounds frequently; (2) sit/stand/walk for six hours in an eight-hour workday; (3) occasionally climb ramps, stairs, ladders, ropes and scaffolds; and (4) occasionally stoop, kneel, and crouch.  Doc. 14-4 at 4-7; Doc. 14-4 at 15-18.  Both doctors listed three occupations "in which there are a significant number of jobs that exist in the national economy" that Plaintiff could perform, including ticket seller.  Doc. 14-4 at 9; Doc. 14-4 at 18.  At Plaintiff's administrative hearing, a vocational expert ("VE") testified that, given the RFC found by Dr. Santiago and the example job of ticket seller she provided, Plaintiff could perform that light, unskilled work.  Doc. 14-3 at 87-88.

### C. The ALJ's Findings

In February 2015, the ALJ denied Plaintiff's application for benefits, finding that she had the RFC to perform the restricted range of light work specified by the state agency physicians.  Doc. 14-3 at 26.  The ALJ acknowledged that the framework of medical vocational guideline rule ("Grid Rule") 202.14 supported a finding of "not disabled," and Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy, such as ticket seller, as stated by the VE.  Doc. 14-3 at 32-33.

### D. Appeals Council

Plaintiff submitted additional medical records to the Appeals Council ("AC"), which revealed that she continued to experience back and knee pain.  Doc. 14-3 at 40-42.  A spinal MRI performed in March 2015 demonstrated diffuse disc bulging at the L4-5 level with severe bilateral neuroforaminal stenosis at the L4-5 level and moderate to severe bilateral neuroforaminal stenosis at the L5-S1 level.  Doc. 14-3 at 54.  In December 2015, Plaintiff reported that her knee and back pain level had remained the same for the prior three years, and she exhibited decreased range of motion in her right knee and lower back.  Doc. 14-3 at 52-53.

3

In July 2016, the AC denied Plaintiff benefits, explicitly affirming the ALJ's RFC assessment. Doc. 14-3 at 5-6. The AC concluded that Grid Rule 202.14 supported a finding of "not disabled" and, based on the testimony of the VE, Plaintiff could perform the job of ticket seller, which existed in significant numbers in the national economy. Doc. 14-3 at 6.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available

4

in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Grid Rules, VE testimony, or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citation to the supporting evidence of record.  The Court is not under any obligation to probe the record to find supporting evidence for one side or the other.  *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ARGUMENT AND ANALYSIS

#### A. AC's Opinion

Plaintiff first argues that the AC's use of Grid Rule 202.14 was improper because the criteria of that rule were not "exactly met" as required by SSR 83-11, since the resulting RFC was for a restricted range of light work and contained both nonexertional and exertional

limitations. Doc. 17 at 12. Plaintiff asserts that this error prejudiced her because she was presumed able to perform a significant number of jobs in the national and local economies – specifically as a ticket seller − but there was no legitimate basis for the finding. Doc. 17 at 12.

Defendant responds that the AC properly found that Plaintiff was not disabled based on Grid Rule 202.14, and the fact that she had nonexertional impairments did not significantly affect the ALJ's RFC assessment, as the additional impairments did not significantly erode the available occupational base. Doc. 23 at 2-3. Defendant maintains that, because the AC properly relied on the Grid Rule in finding Plaintiff not disabled, there was no prejudicial error in its failure to determine the exact number of ticket seller jobs in the national economy. Doc. 23 at 3-4.

When a "claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his [RFC], the ALJ may rely exclusively on the [Grid Rules] in determining whether there is other work available that the claimant can perform." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Fraga*, 810 F.2d at 1304). Nonexertional impairments may or may not affect an individual's ability "to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do." SSR 85-15, 1985 WL 56857, at *2 (Jan. 1, 1985). When a claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments that do significantly affect her RFC, the ALJ must rely on a VE's testimony "or other similar evidence" to establish that suitable jobs exist in the economy. *Fraga*, 810 F.2d at 1304 (citing *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985)).

In this case, Plaintiffs' nonexertional impairments included the limitations that she could only occasionally climb ramps, stairs, ladders, ropes and scaffolds, and only occasionally stoop,

6

kneel, and crouch. "Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work." SSR 85-15, 1985 WL 56857, at *6. Similarly, if a person can stoop and crouch occasionally, "the sedentary and light occupational base is virtually intact." *Id.* at *7. Kneeling "is a relatively rare activity," and that limitation is of little significance in the work place. *Id.* Accordingly, as Defendant argues, Plaintiff's limitation to occasional climbing, stooping, and crouching did not significantly affect her RFC. Consequently, the AC did not err in utilizing the Grid Rules to find Plaintiff not disabled. *Fraga*, 810 F.2d at 1304.

Even assuming, however, that the AC's use of the Grid Rules did constitute error in this case, the VE testified that Plaintiff could perform other jobs that existed in the economy— namely, as a ticket seller. Although Plaintiff argues that the VE's opinion on this point was unclear because the ALJ merely asked the VE if Dr. Santiago had opined that Plaintiff could perform that work, it is apparent from the context of the testimony that the VE agreed with that assessment. *See* Doc. 14-3 at 87-88 (VE, after confirming that Dr. Santiago said Plaintiff could work as a ticket seller, explaining that the fact that Plaintiff had already turned 52 years old was of no consequence regarding the position of ticket seller being a suitable light and unskilled job for someone with a GED). Moreover, both Drs. Reid and Santiago indicated that the ticket seller job exists in significant numbers in the national economy. Doc. 14-4 at 9; Doc. 14-4 at 18. This supports the ALJ's finding to that effect. *Fraga*, 810 F.2d at 1304.

**B. Whether the ALJ and AC Properly Considered all of Plaintiff's Impairments**

Plaintiff next asserts that the ALJ and the AC failed to properly consider all of her severe impairments when assessing her RFC, because they based their RFC finding on Dr. Santiago's determination that Plaintiff's sole impairment was degenerative disc disease. Doc. 17 at 15-18.

Plaintiff argues that the ALJ's and AC's independent assessment of the effects of her additional impairments of stenosis, obesity, arthritis, and hypertension, which were supported by medical records not before Dr. Santiago, led them to erroneously "play doctor." Doc. 17 at 18-19.

As Defendant points out, however, Dr. Santiago expressly considered Plaintiff's knee complaints, osteoarthritis, and hypertension, and Plaintiff's height and weight were noted on the form the doctor completed. *See* Doc. 14-4 at 11-14. Moreover, the fact that Dr. Santiago did not have before her evidence of Plaintiff's stenosis from her MRIs is harmless, because the doctor accurately noted that, in May and June 2013, Plaintiffs' physical examinations collectively revealed that she had normal strength and reflexes in all extremities, no sensory deficit, her straight leg raise test was negative bilaterally, she had a normal gait, no joint deformities, and had no complaints of pain with movement. Doc. 14-4 at 14. Plaintiff's first MRI was taken only two months later, and her second MRI was virtually identical to the first. *Compare* Doc. 14-3 at 54 *with* Doc. 14-9 at 4. Moreover, in December 2015, Plaintiff reported that her knee- and back-pain levels had remained steady for the prior three years. Doc. 14-3 at 52-53. Thus, there is substantial evidence to support the denial of benefits.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 17, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 22, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on September 11, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE